IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |
|---|---|
| **ENRICO BROWN,** | * |
| Plaintiff, | * |
| v. | * Case No.: PWG 19-cv-1988 |
| **PRINCE GEORGE'S COUNTY, et al.** | * |
| Defendant | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff Enrico Brown, a former inmate at the Prince George's County Department of Corrections ("PGDOC"), filed a civil suit against Defendants Prince George's County ("the County") and Chaplain Romero[1]. In his Second Amended Complaint,[2] Mr. Brown claims that Defendant County; (1) violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA") by prohibiting Mr. Brown from freely exercising his religion; (2) violated RLUIPA by discriminating against Mr. Brown based on his religion; (3) violated the Free Exercise Clause of the First and Fourteenth Amendments to the U.S. Constitution; (4) violated the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution; and (5) violated the Establishment Clause of the First and Fourteenth Amendments of the U.S. Constitution. ECF No. 31, Second

---

[1] Nowhere in any of the filings, including those by his attorney, is Chaplain Romero's first name mentioned. Accordingly, the Court also must refer to him only by his title and last name.

[2] On July 2, 2019, Mr. Brown filed a Complaint *pro se* alleging various violations by multiple defendants. *See* ECF No. 1. He then filed an Amended Complaint on November 26, 2019. Amended Complaint, ECF No. 16. Counsel was appointed to represent the Plaintiff, and on June 11, 2020, a Second Amended Complaint was filed on July 24, 2020. SAC, ECF. 31.

Amended Complaint ("SAC"). Only Counts III, IV, and V are brought against Chaplain Romero in his individual capacity. SAC ¶ 16.

On April 16, 2021, the County filed a Motion to Dismiss arguing that: (1) Plaintiff failed to allege evidence of injury under the Prison Litigation Reform Act ("PLRA"); (2) Plaintiff's removal from PGDOC renders violations of RLUIPA moot; and (3) that monetary damages are not authorized by RLUIPA. Cnty. Mot., ECF No. 63-1. On July 7, 2021, Chaplain Romero filed a Motion to Dismiss, or Alternatively, for Summary Judgement arguing that Mr. Brown failed to state a claim under 42 U.S.C. § 1983. Romero Mot., ECF No. 73. I have reviewed the filings[3] and find a hearing unnecessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons stated below, the motions are DENIED.

## BACKGROUND

Plaintiff Enrico Brown is currently an inmate at the Maryland Department of Public Safety and Correctional Services in Jessup, Maryland. SAC ¶ 12. Prior to his transfer, he was an inmate at PGDOC. *Id.* While at PGDOC, Mr. Brown alleges that he and other Muslim inmates were prohibited from performing religious services and daily congregational prayers, wearing religious headwear and materials, receiving certain mail, and accessing religious dietary options. SAC ¶ 5. Mr. Brown notes that this "Islam-specific policy" treats Muslim incarcerees less favorably than incarcerees of other faiths. SAC ¶ 1.

Defendant Romero serves as a Chaplain for the Hispanic and Latino inmates' ministry at PGDOC. Romero Mot., ECF No. 73, p. 4. Mr. Brown alleges that the Chaplain "had and continues to have supervisory authority and control over the approval and coordination of religious services

---

[3]  Cnty. Mot., ECF No. 63; Pl.'s Resp., ECF No. 70; Cnty. Reply, ECF No. 72; Romero Mot., ECF No. 73; Pl.'s Resp., ECF 75; Romero Reply, ECF 77.

requests by incarcerees during the time of Plaintiff's confinement." SAC ¶ 16. Plaintiff Brown cites the PGDOC's Inmate Handbook ("the Handbook") which states that "[r]eligious services, study, and counseling (including crisis intervention) are conducted and coordinated by the Center's Chaplain and approved volunteers." SAC ¶ 31. The handbook also states that "[i]nmates must request religious diets by completing the Inmate Request Form. The form should be directed to the Chaplain. Approved menus established by our food service contactor already satisfied most dietary requirements of recognized religious faiths." SAC ¶ 60.

Mr. Brown further alleges that Chaplain Romero personally engaged in discriminatory behavior against him when the Chaplain "denied [Plaintiff's] request to receive a kosher meal." SAC ¶ 16, 64. Specifically, "Mr. Brown contacted Defendant Romero in the beginning of May 2019 requesting to receive halal meals. Defendant Romero denied his request, stating that, as per policy and options supplied by its food provider, PGDOC does not recognize religious meals for Muslims." SAC ¶ 68.

The County filed a motion to dismiss on April 16, 2021 which Mr. Brown opposed. Cnty. Mot., ECF No. 63; Pl.'s Resp., ECF No. 70. The County also filed a reply in support of its motion on June 4, 2021. Cnty. Reply, ECF No. 72.

Defendant Chaplain Romero filed a motion to dismiss, alternatively, for summary judgement on July 7, 2021. ECF 73, Romero Mot. Plaintiff Brown responded to the motion on July 30, 2021 and Defendant Romero filed a reply on August 17, 2021. ECF No. 75, Pl.'s Resp.; ECF No. 77, Romero Reply.

## STANDARD OF REVIEW

### Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, Civil Action No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Rule 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

**Motion for Summary Judgement**

Federal Rule of Civil Procedure 56(a) provides for the judgment in favor of the movant "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In reviewing the evidence related to a motion for summary judgment, the Court considers undisputed facts, as well as the disputed facts viewed in the light most favorable to the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009); *Dean v. Martinez*, 336 F. Supp. 2d 477, 480 (D. Md. 2004). Only factual disputes that "might affect the outcome of

4

the suit under governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Additionally, the factual dispute must be genuine to defeat a motion for summary judgment, in that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record. . . a court should not adopt that version."). It is the nonmoving party's burden to confront a motion for summary judgment with affirmative evidence to show that a genuine dispute of material fact exists. *Anderson*, 477 U.S. at 256. A plaintiff nonmovant, "to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor." *Id.*

## DISCUSSION

### I.     Prince George's County's Motion to Dismiss is Denied

A motion to dismiss must be granted if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Mr. Brown has met that standard. He does not simply assert that the County violated his First and Fourteenth Amendment rights by discriminating against him based on his religion or restricting his ability to practice religion. Instead, Mr. Brown specifically alleges that PGDOC and its facilitators have prohibited him from practicing Islam by stopping his daily prayers, prohibiting him from wearing a head covering, and denying him access to halal meals, while inmates of other faiths are allowed to practice their religions unimpeded. SAC ¶¶ 28, 30. Furthermore, the County's arguments that (1) some physical injury must be shown under the PLRA; (2) claims made under RLUIPA are moot; and (3) monetary damages are unavailable under RLUIPA, fail as a matter of law. Therefore, the County's motion must be denied.

5

### A. The County Concedes that Mr. Brown does not need to show physical injury to bring suit for a constitutional violation under the PLRA

As the County concedes in its Reply, the PLRA does not require the plaintiff to plead physical injury in order to bring a claim for a constitutional violation. Cnty. Reply, ECF No. 72, p. 2. Section 1997e(e) of the PLRA requires a showing of a physical injury or the commission of a sexual act when the inmate is seeking mental or emotional injuries. 42 U.S.C. § 1997e(e). Specifically, 42 U.S.C. § 1997e(e) states that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for *mental or emotional injury* suffered while in custody without a prior showing of physical injury or the commission of a sexual act." *Id.* (emphasis added). Here, Mr. Brown seeks nominal and punitive damages for the violation of his constitutional rights. Because constitutional violations are not mental or emotional injuries, there is no requirement to demonstrate physical injury or commission of a sexual act.

In *Wilcox v. Brown*, the Fourth Circuit found that monetary damages are available under the PLRA for inmates asserting "deprivations of First Amendment rights" independent of any "physical, mental, or emotional injury." 877 F.3d 161, 169–70 (4th Cir. 2017). Wilcox, an inmate who practiced Rastafarianism, claimed that the discontinuance of Rastafarian services at the Marrion Correctional Institution in North Carolina violated his First Amendment Rights. *Id.* at 165. The State of North Carolina argued that under the PLRA Mr. Wilcox could only recover punitive or nominal damages. *Id.* at 169. But the court found that, "to the extent that § 1997e(e) would prevent Wilcox from recovering compensatory damages for mental or emotional injury, it would not preclude him from recovering compensatory damages for non-mental and non-emotional injury." *Id.* The Fourth Circuit noted further that its precedent supported the conclusion that a First Amendment violation stands as its own compensable injury so that "§ 1997e(e) does

not foreclose the possibility that Wilcox may prove entitlement to compensatory damages." *Id.* at 170 (citing *Piver v. Pender Cty. Bd. of Educ.*, 835 F.2d 1076, 1082 (4th Cir. 1987)).

Though the County is correct in stating that the PLRA does not explicitly state that monetary damages are available, the PLRA does not preclude those kinds of damages either. In fact, as established by *Wilcox*, compensatory, nominal, and punitive damages are available under the PLRA. Thus, this argument fails as well, and the County's Motion to Dismiss Mr. Brown's claims under the PLRA must be denied.

### B. Mr. Brown's claims for monetary relief under RLUIPA are not moot.

The County argues that Mr. Brown's claims for punitive and compensatory damages for constitutional violations under RLUIPA are moot. The County is mistaken.

A case becomes moot when the issues presented are "no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie* v. *Pap's A.M*, 529 U.S. 277, 287 (2000) (quoting *County of Los Angeles* v. *Davis,* 440 U.S. 625, 631 (1979)). It is well established that the transfer or release of an inmate from a defendant facility would make declaratory judgement or injunctive relief moot. *See Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) ("[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there"). However, this court and the Fourth Circuit have made clear that transfer does not render claims for damages moot. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (holding that transfer rendered moot a prisoner's claims for injunctive and declaratory relief, but not claims for damages); *Taylor v. Rogers,* 781 F.2d 1047, 1048 n.1 (4th Cir. 1986) (same); *Ali v. Romero, et al.*, No. PWG-16-186, 2017 WL 3412078, at 2 (D. Md. 2017) (finding that Ali's requests for injunctive relief were moot once he was transferred

7

out of PGDOC, but his "request for money damages, however, survives his transfer from the Detention Center").

Here, the County argues that Mr. Brown's claims under RLUIPA are moot because he is no longer an inmate at PGDOC. Cnty. Mot., ECF 63-1, p. 6. As indicated in Counsel's Pre-motion Letter at ECF 46, Mr. Brown is no longer "seeking declaratory or injunctive relief." Counts I and II of the Second Amended Complaint, however, seek money damages on the basis of religious discrimination under RLUIPA. SAC ¶ 86, 97. Thus, while the County is correct in stating that any claims for injunctive and declaratory relief would be moot because of Mr. Brown's transfer, he is no longer pursuing such relief, and his claim for monetary damages still survives.

      **C.**      **Monetary Damages are Available Under RLUIPA**

Under RLUIPA, "[a] person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a). There is no question that the County falls under the statute's definition of "government," which includes "a State, county, municipality, other governmental entity created under the authority of a State." 42 U.S.C. § 2000cc-5(4)(a)(i). The County claims, however, that the statute's reference to "appropriate relief" does not encompass monetary damages. Cnty. Motion at 6–7. The County cites the Fourth Circuit's decision in *Rendelman v. Rouse* (*Rendelman*), 569 F.3d 182 (4th Cir. 2009), and the Supreme Court's decision *in Sossamon v. Texas (Sossamon)*, 563 U.S. 277 (2011), in support of its argument.

In *Rendelman*, a suit for monetary and injunctive relief against state officials individually and in their official capacities, the Fourth Circuit held that "when invoked as a spending clause statute, RLUIPA does not authorize a claim for money damages against an official sued in her individual capacity." 569 F.3d 182, 184 (4th Cir. 2009). The Fourth Circuit previously held that

8

"RLUIPA does not authorize a claim for money damages against an official sued in her official capacity." *Id.* at 187 (citing *Madison v. Virginia*, 474 F.3d 118 (4th Cir. 2006)). Therefore, when Mr. Rendelman sued employees of the Maryland Department of Corrections ("MDOC") in their individual and official capacities for denying him kosher meals that hindered his ability to practice Judaism, his claim for damages failed. *Id.* at 183-84. Mr. Brown is not suing any defendants in their individual capacity under RLUIPA, so *Rendelman* has no bearing on his RLUIPA claim against the County.

In *Sossamon*, the United States Supreme Court addressed whether "appropriate relief" under RLUIPA includes money damages in lawsuits against a State. 563 U.S. 277, 288. Petitioner Sossamon sued the State of Texas and prison officials and sought monetary relief under RLUIPA when he was denied access to religious services while on "cell restriction for disciplinary infractions." *Id.* at 282. The Court noted that while RLUIPA authorizes claims against the "government," including "[s]tates, counties, municipalities, their instrumentalities and officers, and persons acting under color of state law," RLUIPA did not authorize money damages against a defendant State or state official. *Id.* at 282. The Court suggested that "where the defendant is a sovereign . . . monetary damages are not 'suitable' or 'proper.'" *Id.* at 286.

*Sossamon* addressed the meaning of "appropriate relief" under RLUIPA in the narrow context of claims for money damages against a sovereign state and its officials. 563 U.S. at 277. More specifically, the Court in *Sossamon* addressed whether RLUIPA's authorization of "appropriate relief against a government" constitutes a waiver of a state's Eleventh Amendment immunity when it has accepted federal funds. *Id.* at 285. The Court concluded that "appropriate relief" as used in RLUIPA is "not so free from ambiguity that we may conclude that the States, by receiving federal funds, have unequivocally expressed intent to waive their sovereign immunity to

9

suits for damages. Strictly construing that phrase in favor of the sovereign—as we must—we conclude that it does not include suits for damages against a State." *Id.*(internal quotations and citations omitted). In short, *Sossamon* does not stand for the general proposition that money damages are categorically unavailable under RLUIPA, particularly when they are sought against a governmental entity, such as a county, that is subordinate to a sovereign state. To the contrary, the Court notes that "the word 'appropriate' is inherently context dependent." *Id.* at 286.[4]

The Supreme Court confirmed in *Tanzin v. Tanvir*, 141 S. Ct. 486, 492–93 (2020), that *Sossamon's* prohibition on money damages under RLUIPA is specifically grounded on sovereign immunity and limited to those entities that may assert such immunity. In that case, the defendants brought an action under the Religious Freedom Restoration Act ("RFRA"), sometimes described as RLUIPA's "sister statute," against FBI agents in their official and individual capacities. *Id.* The Supreme Court interpreted RFRA's "appropriate relief" language to *include* money damages against government officials in their individual capacities. *Id.* Distinguishing the circumstances from those in *Sossamon*, the Court stated: "[t]he obvious difference is that this case features a suit against individuals, who do not enjoy sovereign immunity." *Id.*

The case law cited by the County does not directly address whether money damages might be available in RLUIPA claims made against non-immune government entities like the County. *See Ram Ditta By & Through Ram Ditta v. Maryland Nat. Cap. Park & Plan. Comm'n*, 822 F.2d

---

4   *See also Madison*, 474 F.3d at 132 ("We conclude that RLUIPA's 'appropriate relief against a government' language falls short of the unequivocal textual expression necessary to waive State immunity from suits for damages. The statute makes no reference to monetary relief— or even to sovereign immunity generally. And . . . 'appropriate relief' is susceptible to more than one interpretation. That is, although 'appropriate relief' might be read to include damages in some contexts, it is at least equally plausible that, in other contexts, the term might be read to preclude them.").

456, 457 (4th Cir. 1987) ("By its terms, the [eleventh] amendment applies only to one of the United States. It does not immunize political subdivisions of the state, such as municipalities and counties, even though such entities might exercise a slice of state power.")). Multiple district courts have addressed whether RLUIPA authorizes money damages against non-immune county or municipal governments, and have reached different conclusions. *See, e.g., Ruplinger v. Louisville/Jefferson Cty. Metro Gov't*, No. 3:19-CV-583-DJH-RSE, 2021 WL 682075, at *3–4 (W.D. Ky. Feb. 22, 2021) ("Since Louisville Metro Government is not protected by Eleventh Amendment immunity, the *Sossamon* decision does not bar [Plaintiff's] money-damages claim or punitive-damages claim under RLUIPA."); *Williams v. Redman*, No. 3:20-CV-196-JD-MGG, 2021 WL 1907224, at *3 (N.D. Ind. May 12, 2021) ("Williams' transfer moots any claim for injunctive relief under RLUIPA. But he has a nonfrivolous argument that a claim for damages survives."); *Eidam v. Cnty. of Berrien*, 1:19-cv-978, 2019 WL 7343354, at *8 (W.D. Mich. Dec. 31, 2019) ("Although the statute permits the recovery of "appropriate relief against a government," monetary damages are not available under RLUIPA).").[5]

Although Mr. Brown has not cited any binding authority that expressly authorizes money damages against a county under RLUIPA, the County has cited, and I have found, no authority that prohibits it. Accordingly, in light of the general principle that, "absent clear direction to the contrary by Congress, federal courts have the power to award any appropriate relief in cognizable

---

[5] *See also Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 651 F.3d 1163, 1168–69 (9th Cir. 2011) ("*Sossamon v. Texas* holds that states may not be held liable for monetary damages under RLUIPA because they have not waived sovereign immunity. *Sossamon* is grounded on the line of Eleventh Amendment authority requiring 'clear expression' to abrogate the sovereign immunity of states from damages claims. The Eleventh Amendment requirement does not apply to municipalities. The City of Yuma, therefore, may be liable for monetary damages under RLUIPA, if plaintiffs prove a violation and damages.").

11

causes of action brought pursuant to a federal statute," *Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 70, (1992), and because the County is not immune, I find that Mr. Brown may proceed with a claim for monetary damages against the County under RLUIPA .

## II. Chaplain Romero's Motion to Dismiss, or, in the Alternative, for Summary Judgement is Denied

Chaplain Romero argues in his Motion that Mr. Brown has failed to articulate how he was involved in the alleged denial of Mr. Brown's requests for meals that conform with his religious beliefs. Romero Mot., ECF 73, p. 4. Chaplain Romero also asserts that he has no authority to grant or deny special meal requests. *Id.* However, Mr. Brown's Second Amended Complaint notes specific instances where Chaplain Romero allegedly denied his requests for a halal diet. SAC ¶¶ 64, 68, 69. Those allegations, coupled with a citation to the PGDOC Inmate Handbook's definition of Chaplain Romero's role, allows this court to make a reasonable inference that Chaplain Romero could be liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663. And because Mr. Brown asserts a plausible claim for relief, Chaplain Romero's motion to dismiss, or, in the alternative, for summary judgement must be denied. *Id.* at 678–79.

Under 42 U.S.C. § 1983:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

Mr. Brown alleges under Counts III, IV, and V that Chaplain Romero deprived him of his constitutional rights to freely practice Islam. SAC ¶¶ 102, 117, 128. Specifically, Mr. Brown alleges that Chaplain Romero is a supervisor with the ability to approve requests for religion-conforming meals. SAC ¶ 16. Mr. Brown also alleges that Chaplain Romero denied his requests

for both halal meals and, as an alternative, for kosher meals, which were available from PGDOC's vendor, and would allow Mr. Brown to comply with Islamic food restrictions. SAC, ¶¶ 64, 68, 69, 72. Mr. Brown cites to Section 802 of PGDOC's Inmate Handbook, which specifically concerns who at PGDOC has authority to approve inmate requests for religious services and notes that "the Center's Chaplain" and "approved volunteers" conduct and coordinate religious services. SAC ¶ 31. It is reasonable to interpret Section 802 of the Inmate Handbook to indicate that because "religious services…[are] conducted and coordinated by the Center's Chaplain and approved volunteers," Chaplain Romero had the authority Mr. Brown alleges. *Id.* Additionally, Section 204 of the handbook states that "Inmates must request religious diets by completing the Inmate Request Form. The form should be directed to the Chaplain. Approved menus established by our food service contractor already satisfies most dietary requirements of recognized religious faiths." SAC ¶ 60. Mr. Brown alleges that his request for kosher food, which would comply with his Muslim faith and was available through the prison's food service contractor, was denied by Chaplain Romero. SAC ¶ 64. I can certainly infer from those allegations that the denial of kosher meals by Chaplain Romero deprived Mr. Brown of his right to a religion-conforming diet. Therefore, the motion to dismiss for failure to state a claim is denied. SAC ¶ 31.

Chaplain Romero's Motion, in the alternative, for Summary Judgment must also be denied. In support of his Motion for Summary Judgment, Chaplain Romero relies exclusively on a conclusory affidavit stating that he is not a supervisor and that he therefore lacked the authority to take any action with respect to Mr. Brown's dietary requests. Romero Mot., ECF 73-1. Pursuant to Fed. R. Civ. P. 56(d), Mr. Brown attaches to his Opposition a sworn declaration by Mr. Brown's Counsel, which states that Mr. Brown cannot "present facts essential to justify his opposition" without the opportunity to take discovery from Chaplain Romero and PGDOC. ECF 75-1, Rule

13

56 Dec.; Fed. R. Civ. P. 56(d)(2). Counsel's Declaration meets the requirements of Fed. R. Civ. P. 56(d) and correctly states that, in order to oppose Chaplain Romero's Motion for Summary Judgment, Mr. Brown must be given the opportunity to take discovery regarding the scope of Chaplain Romero's authority at PGDOC, and his alleged denial of Mr. Brown's request for religious meals. Pl. Resp., ECF 75-1. Accordingly, because there are genuine disputes of material fact regarding Chaplain Romero's authority and personal involvement in denying Mr. Brown's requests, summary judgment is unwarranted.[6]

## CONCLUSION

For the reasons identified in this Memorandum Opinion, the Defendants' Motions are DENIED.

## ORDER

For the reasons stated in foregoing Memorandum Opinion, it is hereby ORDERED that:

1. Prince George's County's Motion to Dismiss for Failure to State a Claim, ECF 63, is DENIED;

2. Chaplain Romero's Motion to Dismiss, or Alternatively, for Summary Judgment, ECF No. 73, is DENIED;

3. Defendants shall file their Answers to the Second Amended Complaint, ECF No. 31, on or before **April 21, 2022**, after which the Court will enter a Scheduling Order

---

[6] It bears mentioning that in *Ali v. Romero, et al.*, another case involving the denial of Islam-conforming meals, I granted Chaplain Romero's motion to dismiss, or, in the alternative, for summary judgement. No. PWG-16-186, 2018 WL 4205667, at 5 (D. Md. 2018). This case differs from *Ali* in several meaningful ways. In *Ali*, the plaintiff simply named Chaplain Romero as a defendant but did not specifically allege how he had deprived him of his right to practice Islam. Chaplain Romero moved for dismissal or, in the alternative, for summary judgment, and attached an affidavit, his contract with the Detention Center, evidence that Mr. Ali was permitted to participate in Ramadan, and two inmate request forms. *Id.* at 3. Mr. Ali's opposition was filed without evidence rebutting Chaplain Romero's, and without an Affidavit or Declaration pursuant to Fed. R. Civ. P. 56(d). *Id.* Accordingly, Mr. Ali failed to establish that there was a genuine dispute of material fact and it was proper to grant Chaplain Romero's motion in that case. *Id.*

and schedule a Federal Rule of Civil Procedure 16 conference with the parties to discuss further trial proceedings.

Date:  March 31, 2022                                          /S/                              
                                                            Paul W. Grimm
                                                            United States District Judge